**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| NOAH SEILER *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ATHENE ANNUITY AND LIFE COMPANY,<br><br>Defendant. | Case No. 4:23-cv-336<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Noah Seiler ("Plaintiff") brings this Class Action Complaint, individually and on behalf of all others similarly situated (the "Class Members," as defined below), against Athene Annuity and Life Company ("Athene" or "Defendant") alleging as follows based upon information and good faith belief and due investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and to safeguard personally identifiable information including, but not limited to, Plaintiff's and Class Members' name and social security number (collectively, "Private Information" or "PII").

2. Defendant's failures have affected—and continue to affect—over 70,410 people.[1]

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/aa90c020-3e82-4f23-87c5-f4b128460696.shtml (last visited Aug. 28, 2023).

3. Athene provided the Private Information of its customers to Pension Benefit Information, LLC ("PBI") which provides audit and address services for insurance companies, pension funds, and other organizations.

4. PBI, in turn, utilized Progress Software, the provider of MOVEit Transfer software ("MOVEit"), who, on or about May 31, 2023, disclosed that a system vulnerability had allowed the Private Information of Athene's clients (*i.e.*, the Class Members) to be unlawfully accessed and compromised.

5. Specifically, and according to the Notice Letter from PBI to Plaintiff Noah Seiler (the "Notice"),[2] on or around May 31, 2023, Progress Software informed PBI that a vulnerability in the MOVEit software had been exploited by an unauthorized third party.

6. According to the Notice, PBI conducted an investigation and found that the unauthorized third party accessed one of PBI's MOVEit Transfer servers on May 29 and May 30, 2023, and had downloaded data containing the Private Information of Athene's customers, including Plaintiff and Class Members (the "Data Breach").

7. As detailed herein, Athene owed a non-delegable duty to Plaintiff and Class Members to implement and to maintain reasonable and adequate security measures to secure, protect and safeguard their Private Information against unauthorized access and disclosure including, but not limited to, ensuring that the third parties that it contracted with likewise implemented appropriate data security protection measures.

---

[2] The Letter from PBI to Noah Seiler, dated as of Aug. 18, 2023, is attached as **Exhibit A** hereto.

8. Athene breached that duty by, among other things, failing to implement and to maintain reasonable security procedures and practices to protect their customers' Private Information from unauthorized access and disclosure.

9. As a result of Athene's inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiff's and Class Members' Private Information was accessed and disclosed.

10. Plaintiff and Class Members now face a current and ongoing risk of identity theft, which is heightened here by the loss of Social Security numbers—the gold standard for identity thieves.

11. Plaintiff seeks to remedy these harms individually and on behalf of all others similarly situated whose Private Information was accessed during the Data Breach. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, future costs of identity theft monitoring, and injunctive relief including improvements to Defendant's data security systems, and future annual audits.

12. Plaintiff, on behalf of himself and all other Class Members, asserts claims for negligence, negligence per se, breach of implied contract, and unjust enrichment, breach of confidence, bailment, and violations of the Minnesota Consumer Fraud Statute, Minn. Stat. §§ 325F.68, *et seq.*, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Noah Seiler***

13. Plaintiff Noah Seiler is an adult who, at all relevant times, was and is a resident of the State of Minnesota, residing in Minneapolis, Minnesota, with the intent to remain there indefinitely.

14. Plaintiff Noah Seiler has been a customer of Athene since October 2013.

15. On August 18, 2023, Plaintiff Noah Seiler received the Notice informing him that his PII had been compromised in the Data Breach.

16. Since receiving the Notice, Plaintiff Noah Seiler has been required to spend his valuable time monitoring his various accounts and changing his account passwords in an effort to detect and prevent any misuses of his Private Information—time which he would not have had to expend but for the Data Breach.

17. As a result of the Data Breach, Plaintiff Noah Seiler will continue to be at heightened and certainly impending risk for fraud and identity theft, and their attendant damages for years to come.

***Defendant Athene Annuity and Life Company***

18. Defendant Athene is an Iowa corporation with its principal place of business located at 7700 Mills Civic Parkway, West Des Moines, Iowa 50266. Athene is a subsidiary of Athene Holding, Ltd., a Bermuda corporation.

## JURISDICTION & VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

20. This Court has personal jurisdiction over Athene because it is incorporated in Iowa, maintains its principal place of business, and is engaged in substantial business activity in this State, including contracting to insure persons within this state.

21. Venue is proper in this District under 28 U.S.C. § 1391(b) because Athene's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

## FACTUAL BACKGROUND

### A. Brief Overview of Athene & PBI.

22. Athene is a "leading provider of products in the retirement savings market."[3] It is one of the industry's fastest-growing writers of fixed indexed annuities.

23. Athene is a subsidiary company of Bermuda corporation Athene Holding, Ltd. The corporate structure is as follows:[4]




---

[3] Athene Annuity & Life Company, Annuity Advantage, https://www.annuityadvantage.com/insurance-companies/athene-annuity-life-company/ (last visited Aug. 28, 2023).

[4] Overview of Athene's Corporate Structure, Athene, April 2023, https://irathene.q4cdn.com/886888837/files/doc_presentations/2023/Apr/07/athene-corporate-structure-overview-april-2023.pdf (last visited Aug. 28, 2023).

24. Athene's website includes a policy on their cybersecurity capabilities, stating that "Athene is continuously improving our security measures against new and emerging threats to help protect the data privacy of our customers and employees."[5]

25. Moreover, Athene's website maintains a Code of Business Conducts & Ethics in which Athene highlights how its clients entrust Private Information to it and that it "must maintain the confidentiality of any personal or sensitive information entrusted to [them]" and that it "must also exercise appropriate care to prevent unauthorized disclosure and use of such information."[6]

26. Plaintiff and Class members are, or were, clients of Athene and entrusted Athene with their Private Information.

27. PBI is a company operating in the financial services industry, providing audit and address research services for insurance companies, pension funds, and other organizations.

28. PBI receives Private Information of Athene's clients from Athene in connection with PBI's audit and address research services.

**B. The Data Breach**

29. PBI uses a software called MOVEit, which is provided by Progress Software, to "securely transfer files" in the regular course of their business.[7]

30. PBI uploads, stores, transfers, or accesses Private Information belonging to Athene's clients, shared by Athene with PBI, using the MOVEit software.

---

[5] Cybersecurity Capabilities, Athene, August 2020, http://athenecentral.widen.net/s/z1jlrwpmpv (last visited Aug. 28, 2023).

[6] Code of Business Conducts & Ethics, Athene https://athenecentral.widen.net/s/qxfcnhq28l/25320 (last visited Aug. 28, 2023).

[7] *See* Letter from PBI to Noah Seiler (Aug. 18, 2023).

31. According to the Notice, on or about May 31, 2023, Progress Software informed PBI of a vulnerability in the MOVEit software that had been "exploited by an unauthorized third party."

32. According to the Notice, PBI "promptly" conducted an internal investigation into the "nature and scope of the MOVEit vulnerability's impact on [their] systems."[8]

33. According to the Notice, PBI learned through their investigation that the third party accessed one of their MOVEit servers on May 29 and May 30, 2023 and "downloaded data."[9]

34. According to the Notice, PBI then conducted a "manual review of [their] records to confirm the identities of the individuals potentially affected" by the Data Breach.[10]

35. PBI began notifying affected persons of the Data Breach on or around August 18, 2023, over two months after learning of the Data Breach.[11]

36. The Notice PBI sent to Class Members, including Plaintiff, states the information affected by the breach includes Class Members "name and Social Security number,"[12] however a news report stated that the information affected by the breach includes Class Members "names, partial mailing addresses, dates of birth, and Social Security numbers."[13]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] Steve Alder, *Pension Benefit Information Confirms PHI of 1.2 Million Individuals Stolen in MOVEit Transfer Hack*, The HIPAA Journal (Jul. 19, 2023), https://www.hipaajournal.com/pension-benefit-information-371359-hack/#:%7E:text=Pension%20Benefit%20Information%2C%20LLC%2C%20doing,vulnerability%20in%20the%20Progress%20Software%E2%80%99s (last visited Aug. 25, 2023).

**C. Representative Plaintiff Seiler's Experience**

37. As a requisite to receiving services from Defendant, Plaintiff provided his Private Information to Athene and trusted that the information would be safeguarded according to state and federal law.

38. Upon receipt, Private Information was entered and stored on Defendant's network and systems.

39. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information.

40. Plaintiff stores any documents containing his sensitive Private Information in a safe and secure location or destroys the documents.

41. Moreover, Plaintiff diligently chooses unique usernames and passwords for his various online accounts.

42. Had Plaintiff known that Athene failed to follow basic industry security standards and failed to implement systems to protect his Private Information including, but not limited to, properly vetting and ensuring its third-party vendors would likewise employ reasonable and necessary appropriate data security standards, he would not have provided that information to Defendant.

43. As a result of the Data Breach, and the lack of detailed notification, Plaintiff is anxious about the safety of his information.

44. Plaintiff further suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

45. He also lost his benefit of the bargain by paying for insurance services that failed to provide the data security that was promised.

46. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

47. Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties and possibly criminals.

48. Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

49. Plaintiff has a continuing interest in ensuring that Plaintiff's Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**D. Cyber Criminals Have Used & Will Continue to Use Plaintiff's Private Information.**

50. Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach can and will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class Members and to profit off their misfortune.

51. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[14] For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to

[14] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity") (last visited Aug. 28, 2023).

other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[15] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and the Class Members.

52. Social security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal informationin the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services,government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Securitynumber and it's not a good idea because it is connected to your life in so many ways.[16]

[Emphasis added.]

53. PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[17]

54. This was a financially motivated Data Breach, as the only reason the cyber criminals go through the trouble of running a targeted cyberattack against companies like Defendant is to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

---

15 *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 15, 2017, https://www.usatoday.com/story/money/personalfinance/2017/11/15/5-ways-identity-thief-can-use-your-social-security-number/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/ (last visited Aug. 28, 2023).

16 *Dark Web Monitoring: What You Should Know*, Consumer Federation of America, Mar. 19, 2019, https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Aug. 28, 2023).

17 *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737 (last visited Aug. 28, 2023).

55. Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[18] "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[19]

56. These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, they ***will*** use it.[20]

57. Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information ***may continue for years***. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

[Emphasis added.]

58. For instance, with a stolen social security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[22]

---

18 Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, Nov. 15, 2017, https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web (last visited Aug. 28, 2023).

19 *Supra* note 16.

20 Ari Lazarus, *How fast will identity thieves use stolen info?*, May 24, 2017, https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info (last visited Aug. 28, 2023).

21 *Supra* note 17.

22 *Supra* note 15.

59. One such example of criminals using PII for profit, to the detriment of Plaintiff and the Class Members, is the development of "Fullz" packages.

60. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

61. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Classes' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. It is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Classes stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

62. The ramifications of Defendant's failure to keep the Class Members' Private Information secure are long lasting and severe. Once that information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

63. Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

64. For example, approximately 21% of victims do not realize their identify has been compromised until more than two years after it has happened.[23] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[24]

65. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[25]

66. PBI's offer of limited identity monitoring to Plaintiff and the Class is woefully inadequate and will not fully protect Plaintiff from the damages and harm caused by Athene's and PBI's failures.

67. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. Once the offered coverage has expired, Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Athene's gross negligence.

68. Furthermore, identity monitoring only alerts someone to the fact that they have *already been the victim of identity theft* (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[26] Nor can an identity monitoring service remove personal

---

[23] *Medical ID Theft Checklist*, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited Aug. 28, 2023).

[24] *The Potential Damages and Consequences of Medical Identify Theft and HealthcareData Breaches* (*"Potential Damages*"), Experian, https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last visited Aug. 28, 2023).

[25] *Guide for Assisting Identity Theft Victims*, Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[26] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30,2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-

information from the dark web.[27] "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[28]

69. As a direct and proximate result of the Data Breach, Plaintiff and the Class have had their PII exposed, have suffered harm as a result, and have been placed at an imminent, immediate, and continuing increased risk of further harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come. Even more serious is the identity restoration that Plaintiff and other Class Members must go through, which can include spending countless hours filing police reports, following Federal Trade Commission checklists, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps.

70. Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Actual identity theft, including fraudulent credit inquiries and cards being opened in their names;

b. Trespass, damage to, and theft of their personal property including PII;

---

cost.html (last visited Aug. 28, 2023).

27 *Supra* note 16.

28 *Id.*

c. Improper disclosure of their PII;

d. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;

e. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII and that identity thieves have already used that information to defraud other victims of the Data Breach;

f. Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class members' PII for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their PII; and

k. Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

71. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

identity credentials.[29] For example, PII can be sold at a price ranging from $40 to $200.[30] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[31]

72. Moreover, Plaintiff and Class Members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiff's PII.

73. Plaintiff and Class Members also have an interest in ensuring that their PII that was provided to Defendant is removed from Defendant's unencrypted files.

74. Plaintiff is desperately trying to mitigate the damage that Defendant has caused him. Given the kind of PII Defendant made accessible to hackers, however, Plaintiff is very likely to incur additional damages.

75. Because identity thieves have his Private Information, Plaintiff and all Class Members will need to have identity theft monitoring protection for several years and possibly for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[32]

---

[29] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Aug. 28, 2023).

[30] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Aug. 28, 2023).

[31] *In the Dark*, VPN Overview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Aug. 28, 2023).

[32] *Will a New Social Security Number Affect Your Credit?*, Lexington Law (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-

76. None of this should have happened.

**E. Athene was Aware of the Risk of Cyber Attacks**

77. Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it.

78. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[33] Yahoo,[34] Marriott International,[35] Chipotle, Chili's, Arby's,[36] and others.[37]

79. Athene should certainly have been aware, and indeed was aware, that it was at risk for a data breach that could expose the PII that it collected and maintained.

80. Moreover, Athene was aware that such a risk could come from a first-party or third-party attack, meaning that its network could have been attacked directly and/or the PII of its customers could have been compromised by its decisions to entrust customer data to third-party vendors such as PBI.

---

credit.html (last visited Aug. 28, 2023).

[33] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/ (last visited Aug. 28, 2023).

[34] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSO Online (Oct. 4, 2017), https://www.csoonline.com/article/560623/inside-the-russian-hack-of-yahoo-how-they-did-it.html (last visited Aug. 28, 2023).

[35] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, The SSL Store: Hashedout (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Aug. 28, 2023).

[36] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/privacy/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/ (last visited Aug. 28, 2023).

[37] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO Online (Dec. 20, 2018), https://www.csoonline.com/article/534628/the-biggest-data-breaches-of-the-21st-century.html (last visited Aug. 28, 2023).

81. Yet, it appears that Athene did not meaningfully or comprehensively use reasonable measures and/or negligently entrusted its customers' PII to third-parties who did not employ reasonable and appropriate network and data security standards.

82. Athene was clearly aware of the risks it was taking and the harm that could result from inadequate data security, and it voluntarily assumed a duty to protect such information by collecting it in the first place.

83. Given that Athene collected the PII of over 70,410 individuals, it should have been more vigilant about the third parties that it provided this sensitive information to which would have prevented the unauthorized access to and disclosure of Plaintiff's and the Class Members' PII.

## CLASS ALLEGATIONS

84. Plaintiff brings this class action individually, and on behalf of all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

85. Plaintiff seeks certification of the following classes of persons defined as follows:

> **Nationwide Class**: All individuals in the United States whose Private Information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.
>
> **Minnesota Sub-Class**: All individuals residing in the state of Minnesota whose Private Information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

86. Excluded from the Class are Defendant, their subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

87. This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when they move for

class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

88. **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes more than 70,410 individuals.

89. **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

a. Whether Defendant failed to timely notify Plaintiff and Class Members of the Data Breach;

b. Whether Defendant had a duty to protect the PII of Plaintiff and Class Members;

c. Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII, and breached its duties thereby;

d. Whether Defendant was negligent in collecting and disclosing Plaintiff's and Class Members' PII to third-parties such as PBIO;

e. Whether Defendant entered into an implied contract with Plaintiff and Class Members;

f. Whether Defendant breached that contract by failing to adequately safeguard Plaintiff's and Class Members' PII;

g. Whether Defendant was unjustly enriched;

h. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

i. Whether Plaintiff and Class Members are entitled to declaratory judgment due to Defendant's wrongful conduct.

90. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class are all clients of Defendant, each having their PII exposed and/or accessed by an unauthorized third party.

91. **Adequacy of Representation:** Plaintiff is adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

92. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

93. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class.

If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

94. **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

95. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class Members may be readily identified through Defendant's books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
***(On Behalf of Plaintiff and the Nationwide Class)***

96. Plaintiff restates and reallege all preceding factual allegations above as if fully set forth herein.

97. Plaintiff brings this claim individually and on behalf of the Class.

98. Defendant voluntarily assumed and therefore owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

99. In addition to voluntarily assuming a duty by collecting Plaintiff's and Class Members' PII, Defendant's duty to use reasonable care arose from several sources, including but not limited to those described herein.

100. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices, including negligent entrustment, on the part of Athene.

101. Defendant knew or should have known the risks of collecting and storing Plaintiff's and Class Members' PII and the importance of maintaining and using secure systems. Defendant knew or should have known of the many data breaches that have targeted companies that stored PII in recent years.

102. Given the nature of Defendant's business, the sensitivity and value of the PII it maintains, and the resources at its' disposal, Defendant should have identified and foreseen that the third parties it shares information with could have vulnerabilities in their systems and prevented the dissemination of Plaintiff's and Class Members' PII.

103. Defendant makes statements on its websites demonstrating its awareness of the risk of potential data breaches, that it will follow privacy laws and regulations, and that it will use reasonable methods to protect the PII in its control.

104. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

105. Defendant breached the duties owed to Plaintiff and Class Members and thus was negligent.

106. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to ensure that the third parties they share PII with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols,

and software and hardware systems to safeguard and protect PII entrusted to them—including Plaintiff's and Class Members' PII.

107. 76. Plaintiff and Class Members had no ability to protect their PII that was, or remains, in Athene's or PBI's possession.

108. As a result of the Data Breach that compromised Plaintiff's and Class Members' PII, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of clients' information that resulted in the unauthorized access and compromise of PII; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its clients; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII.

109. It was or should have been reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to ensure that the third parties they share PII with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized

release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

110. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised. The PII of Plaintiff and the Class was accessed and stolen as the proximate result of Defendant's failure to exercise reasonable care in safeguarding, securing, and protecting such PII by, inter alia, ensuring that third parties they contract with and share PII with adopt, implement, and maintain appropriate security measures.

111. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injuries, including:

a. Theft of their PII;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data

against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

i. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

j. The diminished value of the services they paid for and received and,

k. Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

112. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT II**
**NEGLIGENCE *PER SE***
***(On Behalf of Plaintiff and the Nationwide Class)***

113. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

114. Plaintiff brings this claim individually and on behalf of the Class.

115. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

116. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures

to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained, stored, and shared with third parties, and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

117. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

118. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

119. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

120. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has

been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

121. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

122. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

123. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
***(On Behalf of Plaintiff and the Nationwide Class)***

124. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

125. Plaintiff brings this claim individually and on behalf of the Class.

126. When Plaintiff and Class Members provided their PII to Defendant, they entered into implied contracts with Defendant, under which Defendant agrees to take reasonable steps to protect Plaintiff's and Class Members' PII, comply with its statutory and common law duties to protect Plaintiff's and Class Members' PII, and to timely notify them in the event of a data breach.

127. Defendant solicited and invited Plaintiff and Class Members to provide their PII as part of Defendant's provision of retirement, annuity and insurance services. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

128. Implicit in the agreement between Plaintiff and Class Members and Defendant, was Defendant's obligation to: (a) use such PII for business purposes only; (b) take reasonable steps to safeguard Plaintiff's and Class Members' PII; (c) prevent unauthorized access and/or disclosure of Plaintiff's and Class Members' PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or disclosure of their PII; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized access and/or disclosure; and (f) retain Plaintiff's and Class Members' PII under conditions that kept such information secure and confidential.

129. When entering into implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

130. Plaintiff and Class Members paid money to Defendant in exchange for services, along with Defendant's promise to protect their PII from unauthorized access and disclosure. Plaintiff and Class Members reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

131. Plaintiff and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

132. Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

133. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard their PII and by failing to provide them with timely and accurate notice of the Data Breach.

134. The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a. Theft of their PII;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

i. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

j. The diminished value of the services they paid for and received; and

k. Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

135. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

136. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (1) strength its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) immediately provide and continue to provide adequate credit monitoring to Plaintiff and all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
***(On Behalf of Plaintiff and the Nationwide Class)***

137. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

138. This count is plead in the alternative to the breach of implied contract count above.

139. Plaintiff brings this claim individually and on behalf of the Class in the alternative to Count II above.

140. Upon information and belief, Defendant funds its data security measures from its general revenue including payments made by or on behalf of Plaintiff and Class Members.

141. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

142. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased insurance services from Defendant and/or its agents and in so doing provided Defendant with their PII.

143. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

144. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

145. In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members PII. Instead of providing a reasonable level of data security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits and the expense of Plaintiff and Class Members by utilizing cheaper, ineffective data security measures.

146. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement appropriate data management and security measures that are mandated by its common law and statutory duties.

147. Defendant failed to secure Plaintiff and Class Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members conferred upon Defendant.

148. Defendant acquired Plaintiff's and Class Members' PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

149. If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII, they would not have agreed to provide their PII to Defendant.

150. Plaintiff and Class Members have no adequate remedy at law.

151. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injuries, including:

a. Theft of their PII;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further

breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

i. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

j. The diminished value of the services they paid for and received; and

k. Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

152. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

153. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**COUNT V**
**BREACH OF CONFIDENCE**
***(On Behalf of Plaintiff and the Nationwide Class)***

154. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

155. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Private Information.

156. As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' Private Information would be collected, stored and protected in confidence, and would not be disclosed to unauthorized third parties.

157. Plaintiff and Class Members provided their Private Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be disseminated to any unauthorized parties.

158. Plaintiff and Class Members also provided their Private Information to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect such Private Information from unauthorized disclosure.

159. Defendant voluntarily received in confidence Plaintiff's and Class Members' Private Information with the understanding that the Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

160. Due to Defendant's failure to prevent, detect, or avoid the Data Breach from occurring by, inter alia, following industry standard information security practices to secure Plaintiff's and Class Members' Private Information, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

161. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

162. But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their protected Private

Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.

163. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' protected Private Information, as well as the resulting damages.

164. The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information.

165. As a direct and proximate result of Defendant's breach of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from financial fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of clients in their continued possession and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

166. As a direct and proximate result of Defendant's breach of confidence, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

**COUNT VI**
**BAILMENT**
***(On Behalf of Plaintiff and the Nationwide Class)***

167. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

168. Plaintiff and Class members delivered their PII to Defendant in order to receive services from Defendant.

169. The PII was furnished to Defendant for the exclusive purpose of receiving the services Athene provides in the ordinary course of business, and Defendant took possession of the PII for the same reason.

170. Upon delivery, Plaintiff and Class members intended and understood that Defendant would adequately safeguard their PII, and Defendant, in accepting possession, understood the expectations of Plaintiff and Class members. Accordingly, bailment was established for the mutual benefit of the parties at the time of delivery and acceptance of possession.

171. Pursuant to the bailment arrangement, Defendant owed Plaintiff and Class members a duty of reasonable care in safeguarding and protecting their PII.

172. Defendant breached this duty by failing to take adequate steps to protect the PII entrusted to them and by failing to conform to best practices and industry standards to prevent unauthorized access to Plaintiff's and Class members' PII.

173. As a result of Defendant's failure to fulfill its bailment arrangement, Plaintiff and Class members suffered and will continue to suffer injury, which includes but is not limited to the monetary difference between the amount paid for services as promised and the services actually provided by Defendants (which did not include adequate or industry standard data protection),

inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class member's PII has also diminished the value of the PII. Plaintiff and the Classes have also experienced other damages consistent with the theft of their PII. Through its failure to timely discover and provide clear notification of the Data Breach to consumers, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps to secure their PII.

**COUNT VII**
**VIOLATION OF MINNESOTA CONSUMER FRAUD ACT**
**Minn. Stat. §§ 325F.68, *et seq*.**
***(On Behalf of Plaintiff and the Minnesota Class)***

174. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

175. Defendant engaged in deceptive, misleading, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of the Minnesota Consumer Fraud Act ("MCFA"), including but not limited to the following:

a. Misrepresenting material facts to Plaintiff and the Class by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

b. Misrepresenting material facts to Plaintiff and the Class by representing that it did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Class Members' PII;

c. Omitting, suppressing, and/or concealing material facts of the inadequacy of its privacy and security protections for Class Members' PII;

d. Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws; and,

e. Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to the Class in a timely and accurate manner.

176. Defendant knew or should have known that its network and data security practices, or those of its vendors or affiliates, were inadequate to safeguard the PII entrusted to it by Class Members, and that risk of a data breach or theft was highly likely.

177. Defendant failed to perform due diligence in selecting those vendors or affiliates with whom it would share the PII entrusted to it by Class Members, and failed to audit, monitor, and verify the integrity of their networks and data security practices.

178. Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to the defective data security and made affirmative representations regarding its data security commitments and practices.

179. Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and Class Members) regarding the security of Defendant's network and aggregation of PII.

180. The representations upon which Plaintiff and Class Members relied were material representations (e.g., as to Defendant's adequate protection of PII), and Defendant's clients (including Plaintiff and Class Members) relied on those representations to their detriment.

181. Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiff and other Class Members have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their personal information.

182. Defendant knew or should have known that their computer systems and data security practices or those of its vendors or affiliates, were inadequate to safeguard Class Members' PII and that the risk of a data security incident was high.

183. Defendant's acts, practices, and omissions were done in the course of Defendant's business of furnishing insurance services to consumers in the State of Minnesota.

184. By failing to adequately monitor and audit the data security systems of their vendors and business associates, Defendant put Plaintiff's and Class Members' information at severe risk.

185. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiff's and Class Members' PII was disclosed to third parties without authorization, causing and will continue to cause Plaintiff and Class Members damages.

186. Plaintiff and Class Members were injured because:

a. Plaintiff and Class Members would not have become Defendant's clients had they known the true nature and character of Defendant's data security practices;

b. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of promises that Defendant would keep their information reasonably secure, and

c. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the promise to monitor its computer systems and networks or those of its vendors or affiliates, to ensure that it adopted reasonable data security measures.

187. As a direct and proximate result of Defendant's violations of the MCFA, Plaintiff and the Class Members suffered damages including, but not limited to: (i) lost or diminished value of their PII; (ii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

188. As a result, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

189. Plaintiff brings this action on behalf of himself and Class Members for the relief requested above and for the public benefit to promote the public interests in the provision of truthful, fair information to allow consumers to make informed insurance purchasing decisions and to protect Plaintiff, Class Members and the public from Defendant's unfair, deceptive, and unlawful practices. Defendant's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

190. Plaintiff and Class Members seek relief under Minn. Stat. §§ 325F.68-70, including, but not limited to, actual damages, injunctive relief, and/or attorney's fees and costs.

191. On behalf of himself and other members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages and reasonable attorneys' fees.

192. Also as a direct result of Defendant's violation of the MCFA, Plaintiff and the Class Members are entitled to damages as well as equitable relief, including, but not limited to, ordering Defendant to: (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Noah Seiler, individually and on behalf of all others similarly situated, prays for judgment in his favor and against Athene and respectfully requests the following relief:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Declaratory and injunctive relief as described herein;

f. Awarding Plaintiff reasonable attorneys' fees, costs and expenses;

g. Awarding pre- and post-judgment interest on any amounts awarded; and

h. Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Dated: September 6, 2023 Respectfully submitted,

/s/ Nick Mauro

Nicholas J. Mauro AT0005007
CARNEY & APPLEBY LAW FIRM
400 Homestead Building
303 Locust Street
Des Moines, IA 50309
515-282-6803
515-282-4700 (fax)
mauro@carneyappleby.com

David S. Almeida
Elena A. Belov (*pro hac vice forthcoming)*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (312) 576-3024
david@almeidalawgroup.com
elena@almeidalawgroup.com